IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **GREGORY STEPHEN PORRAS,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | Civil Action No. 4:22-cv-1135-O-BP |
| § | |
| **COMMISSIONER OF** § | |
| **SOCIAL SECURITY,** § | |
| § | |
| **Defendant.** § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Gregory Stephen Porras ("Porras") applied for, and was granted, Title II Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA"). However, the Social Security Administration later determined that Porras was no longer disabled. Porras appealed. Finding that the Administrative Law Judge ("ALJ") applied the correct legal standards, but that substantial evidence does not support the decision, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **REVERSE** the Commissioner's decision and **REMAND** the case for further administrative action.

I.  **BACKGROUND**

In 2007, Porras successfully applied for DIB. Soc. Sec. Adm. R. (hereinafter "Tr."), ECF No. 10-1 at 125, 128. However, on July 21, 2017, Porras's benefits were terminated following a periodic review of his right to continuing benefits. Tr. 123, 131-32, 134; ECF No. 20 at 7. The Commissioner affirmed this decision on February 21, 2019. Tr. 134. Porras appealed, and after a hearing on November 8, 2021 (Tr. 80-123), the ALJ affirmed the decision on May 3, 2022 (Tr. 16-28). On October 21, 2022, the Appeals Council ("AC") denied review of the ALJ's decision. Tr.

7-13. After the AC denied review, Porras filed this civil action on December 22, 2022, seeking judicial review under 42 U.S.C. § 405(g). *See* ECF No. 1; *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (citing 20 C.F.R. § 416.1400(a)(5)) ("[T]he Commissioner's decision does not become final until after the Appeals Council makes its decision denying the claimant's request for review.").

## II.   STANDARD OF REVIEW

Title II of the SSA, 42 U.S.C. §§ 401-434, governs the disability insurance program. A person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). To determine whether a claimant is disabled and thus entitled to DIB, the Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 404.1520.

First, the claimant must not be presently doing any substantial gainful activity ("SGA"). *Id.* § 404.1520(a)(4)(i). SGA is work that "involves doing significant physical or mental activities" for pay or profit. *Id.* § 404.1572. Second, the claimant must have a severe impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). Third, disability exists if the impairment or combination of impairments meets or equals an impairment in the federal regulatory list. *See* 20 C.F.R. § 404.1520(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1). Before proceeding to steps four and five, the Commissioner assesses the claimant's residual functional capacity ("RFC") and considers his past relevant work ("PRW"). *See id.* § 404.1520(a)(4), (e)-(f). RFC means "the most [a claimant] can still do despite [his] limitations," *id.* § 404.1545(a)(1), while PRW means work the claimant has done "within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1).

2

Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to his PRW considering his RFC. *Id.* § 404.1520(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* § 404.1520(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing he is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

However, "[i]f a recipient is entitled to DIB, his or her continued entitlement to those benefits must be reviewed periodically." *Huerta v. Saul*, No. 4:19-CV-1064-Y, 2021 WL 1216481, at *1 (N.D. Tex. Mar. 9, 2021) *rec. adopted,* 2021 WL 1209186 (N.D. Tex. Mar. 31, 2021); *see also* 20 C.F.R. § 404.1594(a). "For disabled adults, the Commissioner must determine if there has been 'medical improvement' in the recipient's impairments and, if so, whether this medical improvement is related to the recipient's ability to work." *Huerta,* 2021 WL 1216481 at *1. "Medical improvement is any decrease in the medical severity of [the recipient's] impairment(s) which was present at the time of the most recent favorable medical decision that [the recipient was] disabled or continued to be disabled." 20 C.F.R § 404.1594(b)(1). "A determination that there has been a decrease in medical severity must be based on improvement in the symptoms, signs, and/or laboratory findings associated with [the recipient's] impairment(s)." *Id*. The "most recent favorable medical decision is the latest decision involving a consideration of the medical evidence and the issue of whether [a claimant/recipient was] disabled or continued to be disabled which

became final." 20 C.F.R. § 404.1594(b)(7). "This decision is also known as the 'comparison point decision' or 'CPD.'" *Huerta*, 2021 WL 1216481, at *1.

Furthermore:

> If medical improvement has occurred, the ALJ must compare the recipient's current functional capacity to do basic work activities (*i.e.*, his or her [RFC]) based on the previously existing impairments with the recipient's prior [RFC] in order to determine whether the medical improvement is related to the recipient's ability to do work.

*Id*. at 2. The Social Security Administration has promulgated an eight-step evaluation process for determining whether a recipient's disability continues. *See* 20 C.F.R. § 404.1594(f).

First, the ALJ considers whether the plaintiff is "engaging in [SGA]." 20 C.F.R. § 404.1594(f)(1). If so, "and any applicable trial work period has been completed," the ALJ "will find disability to have ended." *Id*.

Second, if the plaintiff is not engaging in SGA, the ALJ considers whether the plaintiff has "an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart." 20 C.F.R. § 404.1594(f)(2). If so, the "disability will be found to continue." *Id*.

Third, if the plaintiff does not have the requisite impairment or combination of impairments to satisfy step two, the ALJ considers whether "there has been medical improvement as shown by a decrease in medical severity." 20 C.F.R. § 404.1594(f)(3). If so, the ALJ proceeds to step four, but if not, the ALJ proceeds to step five. 20 C.F.R. § 404.1594(f)(4-5).

Fourth, if there has been medical improvement per step three, the ALJ must "determine whether it is related to [the recipient's] ability to do work in accordance with paragraphs (b)(1) through (4) of this section." 20 C.F.R. § 404.1594(f)(4).

> Medical improvement is related to [the recipient's] ability to work if there has been a decrease in the severity, as defined in paragraph

4

> (b)(1) of this section, of the impairment(s) present at the time of the most recent favorable medical decision and an increase in [the recipient's] functional capacity to do basic work activities as discussed in paragraph (b)(4) of this section.

20 C.F.R. § 404.1594(b)(3). "Unless an increase in the current [RFC] is based on changes in the signs, symptoms, or laboratory findings, any medical improvement that has occurred will not be considered related to [the recipient's] ability to do work." 20 C.F.R. § 404.1594(c)(2). However, "[i]f medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make [the] most recent favorable decision," the ALJ "will find that the medical improvement was related to [the recipient's] ability to work." 20 C.F.R. § 404.1594(c)(3)(i). If medical improvement is not related to the recipient's ability to do work, the ALJ proceeds to step five, but if it is related, the ALJ proceeds to step six. 20 C.F.R. § 404.1594(f)(4).

Fifth, if the ALJ found at step three "that there has been no medical improvement" or found at step four that the medical improvement is not related to the recipient's ability to work, the ALJ then considers "whether any of the exceptions in paragraphs (d) and (e) of this section apply." 20 C.F.R. § 404.1594(f)(5). "If one of the first group of exceptions to medical improvement applies," an exception under paragraph (d), then the ALJ must refer to step 6. *Id*.

Importantly for this case, "[i]f an exception from the second group of exceptions to medical improvement applies," an exception under paragraph (e), the recipient's "disability will be found to have ended." *Id*. "The second group of exceptions to medical improvement may be considered at any point in this process." *Id*. The regulation explains that "the following exceptions may result in a determination that you are no longer disabled" and that "[i]n these situations the decision will be made without a determination that you have medically improved or can engage in substantial gainful activity." 20 C.F.R. § 1594(e). One such exception is that "[the recipient does] not

5

cooperate with [the Administration]." *Id.* § 1594(e)(1). Specifically, "[i]f there is a question about whether [the recipient] continue[s] to be disabled and [the Administration asks the recipient] to give us medical or other evidence or to go for a physical or mental examination by a certain date," the Administration "will find that [the recipient's] disability has ended if [the recipient] fails, without good cause, to do what we ask." *Id.*; *see also* 20 C.F.R. § 404.911 and 20 C.F.R. § 404.1518 (explaining the "good cause" standard).

Sixth, if medical improvement was shown to be related to the recipient's ability to do work (at step four) "or if one of the first group of exceptions to medical improvement applies, [the ALJ] will determine whether all [the recipient's] current impairments are severe." 20 C.F.R. § 404.1594(f)(6); *see also* 20 C.F.R. § 404.1521. If the impairments are not severe, the recipient is no longer considered to be disabled. *Id.* § 404.1594(f)(6).

Seventh, if the recipient's impairments are severe, the ALJ "will assess [the recipient's] [RFC] based on all [of the recipient's] current impairments and consider whether [the recipient] can still do work [that the recipient has] done in the past." 20 C.F.R. § 404.1594(f)(7). If so, "disability will be found to have ended." *Id.*

If not, the ALJ proceeds to step eight and considers whether the recipient can "do other work given the [RFC] assessment" made in step seven and given the claimant's "age, education, and past work experience." 20 C.F.R. § 404.1594(f)(8). If so, disability has ended, but if not, disability continues. *Id.*

"In termination proceedings, the ultimate burden of proof lies with the Secretary." *Huerta*, 2021 WL 1216481, at *2 (citing *Griego v. Sullivan*, 940 F.2d 942, 944 (5th Cir. 1991)). Furthermore, a "prior determination creates a presumption of continuing disability that requires the Secretary to provide evidence of a change in the claimant's disabling condition." *Taylor v.*

6

*Heckler*, 742 F.2d 253, 255 (5th Cir. 1984). A "failure to cooperate" finding does not appear to shift the burden of proof to the claimant, though there is some uncertainty about this in the case law. *See Brown v. Astrue*, No. 07-3018, 2011 WL 3364397 at *5 (E.D. La. June 9, 2011) (addressing "failure to cooperate" arguments in a termination proceeding and stating that "[i]n a benefits termination proceeding, the Commissioner bears the burden of proof…"); *Johnson v. Commissioner*, No. 6:14-CV-02715, 2016 WL 373316, at *4 (W.D. La. Jan. 5, 2016) (same); *but see Morgan v. Gardner*, 264 F. Supp. 576, 577 n.3 (S.D. Miss. 1967) (if one party normally has burden of proof, "but the other party has peculiar knowledge or control of the evidence as to such matter, the burden rests on the latter to produce such evidence, and failing, the negative will be presumed to have been established.").

Case law interpreting the "failure to cooperate" exception in the Fifth Circuit complicates the idea that "failure to cooperate" automatically leads to termination (or initial denial) of benefits. A court in the Eastern District of Louisiana "found no case law to support a bright-line rule that would render termination of benefits automatic if a plaintiff failed to cooperate." *Brown*, 2011 WL 3364397 at *7 n.2. Similarly, some courts have indicated that a "failure to cooperate," standing alone, is not sufficient to terminate benefits, since "Social Security benefits may not be terminated without a finding of medical improvement." *Johnson*, 2016 WL 373316, at *10; *see also Brown v. Astrue*, No. 2:11-cv-1278, 2012 WL 2133633, at *6 (W. D. La. May 25, 2012) (Although claimant's failure to cooperate was "mystifying" and "the ALJ's frustration [was] certainly understandable, a valid IQ score must be obtained before a proper evaluation of the Listing can be made.").

Judicial review involving the termination of disability benefits is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the

7

record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III.   ANALYSIS

Porras argues that substantial evidence does not support the ALJ's RFC for two reasons: because the ALJ "failed to explain how [Porras] no longer met the Listings" and because he "crafted an RFC out of whole cloth leaving the court unable to meaningfully review the decision." ECF No. 16 at 2. The Commissioner responds that substantial evidence supports the ALJ's decision. ECF No. 20 at 3. The Court finds that the ALJ employed the proper legal standard to determine if Porras no longer met the Listings, but substantial evidence does not support the ALJ's decision affirming the termination of Porras's benefits based on the evidence in the record.

### A. The ALJ's decision used the correct legal standards to determine if Porras no longer met the Listings.

The ALJ employed the necessary eight-step standard to determine whether termination of Porras's benefits was proper. At step one, he found that "[t]hrough the date of this decision, [Porras] has not engaged in SGA." Tr. 21. At step two, he found that "[s]ince July 1, 2017, [Porras] has had no impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526)." Tr. 21. At step three, he found that medical improvement occurred on July 1, 2017, referencing both Porras's "pattern of non-cooperation with the State agency, including failing to appear for consultative examinations," as well as the fact that "his medical records note recurrent medication dosage changes with reported improvement in his symptoms." Tr. 23. Since "failure to cooperate" is a Group II exception, it can be addressed at any point in the process, including at step three. 20 C.F.R. § 404.1594(f)(5).

At step four, the ALJ found that "[t]he medical improvement is related to the ability to work because, by July 1, 2017, the claimant's CPD impairments no longer met or medically equaled the same Listing(s) that was met at the time of the CPD." Tr. 23. To draw this conclusion, the ALJ echoed 20 C.F.R. § 404.1594(c)(3)(i), which explains, "If medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same Listing section used to make our most recent favorable decision, we will find that the medical improvement was related to your ability to work."

Because he found that the medical improvement was related to Porras's ability to do work, the ALJ correctly skipped step five. Though presented toward the beginning of his decision, the ALJ addressed the step six question of whether Porras's impairments were severe, finding that "the claimant had 'severe' impairments consistent with the [SSA] and regulatory definitions,

9

including Social Security Ruling (SSR) 85-28." Tr. 21. At step seven, the ALJ assessed Porras's RFC based on various cited medical records and Porras's own testimony at the administrative hearing and determined that Porras could not perform his PRW. Tr. 24-27. The ALJ explained, "[N]o treating or examining medical source has offered an opinion about the claimant's symptoms and their effects on the claimant's abilities to perform work activities, leaving the claimant's allegations uncorroborated." Tr. 26.

At step eight, the ALJ found that "[s]ince July 1, 2017, considering [Porras's] age, education, work experience, and RFC based on the impairments present since July 1, 2017, [he] has been able to perform a significant number of jobs in the national economy." Tr. 21-22. Accordingly, following an application of the regulatory eight-step process, the ALJ concluded that "[Porras's] disability under sections 216(i) and 223(f) of the [SSA] ended on July 1, 2017, and [he] has not become disabled again since that date." Tr. 22.

### B.   Substantial evidence does not support the ALJ's decision that Porras no longer met the Listings.

Porras criticizes the ALJ's step two determination that he no longer met the Listings. ECF No. 16 at 11-16. Specifically, Porras argues that the ALJ failed to explain how Porras no longer met the Listings and that he lacked support in the record for reaching that conclusion. ECF Nos. 16, 21. The Commissioner responds that the ALJ addressed each of the necessary points in concluding that Porras did not meet any of the physical and mental impairment Listings. ECF No. 20 at 4-6.

"To establish that a claimant's injuries meet or medically equal a listing, medical findings must support all of the criteria for a listed impairment (or most similarly listed impairment)." *Thomas v. Colvin*, No. 15-0026, 2016 WL 1020749, at *9 (W.D. La. Feb. 2, 2016) (citing *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990)). "An impairment that manifests only some of the

requisite criteria, no matter how severely, does not qualify." *Id.* (*citing Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). Here, the ALJ noted that "in the absence of expert medical testimony that any of [Plaintiff's] severe MDIs [medically determinable impairments] equals a listing, I cannot find that any of them do so." Tr. at 22.

The ALJ proceeded to determine whether any of Porras's MDIs met a Listing. In his step two analysis, the ALJ addressed Listings 12.04 and 12.06 (SSR 96-8p) in 20 C.F.R. Part 404, Subpart P, Appendix 1. Listing 12.04 requires satisfaction of paragraphs "A and B" or "A and C." Listing 12.06 follows the same structure. When applying the paragraph B criteria, the ALJ noted that "[i]n addition, the record shows that [Porras] was able to provide information about his health, describe his prior work history, follow instructions from healthcare providers, comply with treatment outside of a doctor's office or hospital, and respond to questions from medical providers." Tr. at 22-23. In support of his conclusions, the ALJ cited to the record when discussing Porras's "moderate limitations in his ability to adapt or manage himself," but this addresses only one of the required functional areas. Tr. at 23. When addressing the paragraph C criteria, the ALJ noted that, "[Porras] can attend to his own needs, and those of his parents, without rigid structure or assistance." Tr. at 23.

The ALJ erred in finding that none of Porras's MDIs met a Listing because no medical opinion evidence or other sufficient medical evidence supported his conclusion. It is clearly established law that ALJs may not make disability determinations utterly devoid of supporting medical opinion evidence. *See, e.g.*, *Thornhill v. Colvin*, No. 3:14-cv-335-M, 2015 WL 232844, at *10 (N.D. Tex. Dec. 15, 2014), *rec. adopted*, 2015 WL 232844 (N.D. Tex. Jan. 16, 2015); *Fitzpatrick v. Colvin*, No. 3:15-cv-3202-D, 2016 WL 1258477, at *7-8 (N.D. Tex. Mar. 31, 2016); *Bowles v. Comm'r of Soc. Sec.*, No. 7:20-cv-00112-O-BP, 2021 WL 7451148, at *3 (N.D. Tex.

Oct. 19, 2021), *rec. adopted*, 2022 WL 768546 (N.D. Tex. Mar. 14, 2022). While in these cases, the ALJ completely rejected the only medical evidence that lent support to his or her determination, the same rationale requires reversal on the facts of this case where no medical opinion evidence or sufficient medical evidence in general supported the ALJ's conclusion. *See Thomas*, 2016 WL 1020749, at *9.

As noted above, the ALJ recognized that no "treating or examining medical source has offered an opinion about the claimant's symptoms and their effects on the claimant's abilities to perform work activities." Tr. 26. The ALJ also found that "[n]o treating, examining, or reviewing medical source has opined that the claimant meets or medically equals any listed physical impairment." Tr. 22. However, the ALJ did not recognize that this lack of opinion evidence potentially undermined his analysis of whether Porras's MDIs met a Listing. In referring to the scant medical records that potentially addressed the issue, the ALJ was left to make generalized statements and references to medication dosage changes with reported improvement in Porras's symptoms. Tr. 23.

The records from the Wise Regional Health System and the Helen Farabee Center lack substantial references to Porras's MDIs that support a conclusion that he no longer met a Listing. *See* Exhibits 10F, 16F, 17F; Tr. 733, 842, 1004. Although the paucity of the medical record on the subject of Porras's MDIs and the Listings may, in part, be due to Porras's noncompliance with appointments, this lack of cooperation does not equal evidence of improvement in his medical conditions such that Porras no longer was disabled. As noted above, the Court must presume that disability continues unless the Commissioner proves otherwise, and on the limited medical record in this case, the ALJ erred in finding that the Commissioner had met that burden of showing that Porras's MDIs no longer met a Listing. The undersigned recommends that Judge O'Connor

**REVERSE** the ALJ's decision on this point and **REMAND** the case for further administrative consideration.

        **D.**        **Substantial evidence did not support the ALJ's RFC determination.**

The Court must now examine the ALJ's RFC determination and determine whether substantial evidence supports the conclusion reached. *See Ripley*, 67 F.3d at 557 (finding error only because "the record includes a vast amount of medical evidence establishing that [the claimant] has a problem with his back" but "does not clearly establish . . . the effect claimant's condition had on his ability to work"); *Ernest A. J. v. Saul*, 1:18-cv-00194-BU, 2020 WL 6877706, at *13 (N.D. Tex. Oct. 19, 2020) ("Unlike *Ripley*, this case contains evidence from multiple sources establishing the effect of Plaintiff's mental impairments on his ability to perform work-related activities."). For the reasons previously stated, substantial evidence does not support the ALJ's RFC determination due to a lack of medical opinion evidence or other evidence of Porras's ongoing MDIs.

"[A]n ALJ may not—without opinions from medical experts—derive the applicant's [RFC] based solely on the evidence of his or her claimed medical conditions. Thus, an ALJ may not rely on her own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009). Here, the medical evidence is unclear on whether Porras's MDIs were improved from the original determination of his disability. His record of missed appointments, adjustment of medication dosages, and even unattended court hearings no doubt frustrated his health providers and the Commissioner. However, the issue for determination on this point is whether substantial evidence in the record supported the ALJ's determination of Porras's RFC. On the facts of this case, with an absence of

13

medical opinion evidence on point and a lack of substantial medical evidence to support the ALJ's RFC determination, Judge O'Connor should **REVERSE** and **REMAND** the case on this point.

## IV. CONCLUSION

The ALJ employed the proper legal standards in reaching his conclusion in this case. However, because substantial evidence does not support the ALJ's decision that Porras was not entitled to a continuation of his DIB, Judge O'Connor should **REVERSE** the ALJ's decision and **REMAND** the case for further administrative proceedings.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on January 23, 2024.

_____
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE

14